ROBERT WILSON CARTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. ROBERT WILSON CARTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 80751, 80752. Promulgated October 6, 1937.

*Charles F. Byers, Esq.*, for the petitioners.
*Edward A. Tonjes, Esq.*, for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, involve income tax deficiencies as follows:

| Petitioner | Docket No. | Year | Deficiency | 50 percent penalty |
|---|---|---|---|---|
| Robert Wilson Carter | 80751 | 1930 | $227. 25 | $113. 63 |
| Do | 80751 | 1931 | 225. 00 | 112. 50 |
| Mrs. Robert Wilson Carter | 80752 | 1931 | 225. 00 | |

The respondent contends that the returns filed by Robert Wilson Carter for 1930 and 1931 were false and fraudulent, with intent to evade tax. He does not contend that the return filed by Mrs. Robert Wilson Carter for 1931 was false and fraudulent.

The petitioners are husband and wife, residing at Luling, Caldwell County, Texas. They filed separate income tax returns on a community property basis for both 1930 and 1931. The return filed by the husband (hereinafter called Carter) for 1930 shows net community income of husband and wife of $18,499.41. He reported as his net income for 1930 one-half of the above, or $9,249.71. The return filed by Carter for 1931 shows net community income of husband and wife of $22,202.36, one-half of which, or $11,101.18, was reported as the net income of each.

Carter contends that the respondent erred in the determination of the deficiency for 1930 by disallowing the deduction from gross income of one-half of an alleged loss of $8,420 upon the sale of 200 shares of Gulf Oil Corporation stock and that in determining the deficiency for 1931 he erred in disallowing the deduction of one-half of a claimed loss of $6,950 upon the sale of 200 shares of Gulf Oil Corporation stock; also that for 1931 the respondent erred in adding to the net income reported one-half of $306.75 salaries and commissions. He also contends that the respondent erred in ascertaining a 50 percent penalty for each of the years 1930 and 1931; that the returns were not false and fraudulent with intent to evade income tax; and that the deficiency asserted for 1930 is barred by the statute of limitations.

Petitioner Mrs. Robert Wilson Carter contends that in the determination of the deficiency against her for 1931 the respondent erred by adding to the net income reported one-half of $306.75 for increased salaries and commissions received by the community, and by disallowing the deduction of one-half of the loss of $6,950 claimed to have been sustained on a sale by the community in 1931 of 200 shares of Gulf Oil Corporation stock. Neither petitioner has pleaded the statute of limitations so far as the deficiencies for 1931 are concerned.

In the return filed by Carter for 1930 it is claimed that the community sustained a loss of $8,420 upon the sale of 200 shares of Gulf Oil Corporation stock. The cost of the stock was reported to have been $20,970 and the sale price $12,550. In the return filed by him for 1931 it is claimed that the community sustained a loss of $6,950 upon the sale of 200 shares of Gulf Oil Corporation stock, the cost of which is represented to have been $12,550 and the sale price $5,600. After the caption "State how property was acquired", appearing in schedule C of the 1931 return, is the notation "Received in cancellation of purchase note, 'Involuntarily acquired.' "

In answer to the question, "During the years 1930 and 1931, what was your occupation or business Mr. Carter?", Carter testified:

Most of my time was devoted to the Gulf Refining Company wholesale distributor agency at Luling. I had other duties and business pertaining to farming, owned land, operated it, I owned producing oil royalties and during the years 1928 and 1929 and 1930 and 1931 and the years since, I have received royalties which have required the investment of all these moneys received from those and I have dealt during that period in the purchase of oil royalties, stocks, listed stocks, and investments, local by nature to a good extent, and the early part of 1929 and 1930, such as the purchases of notes from and through the Lipscomb Bank and Trust Company, Luling, Texas, and stocks, as I have previously stated, and bonds.

The evidence of record in these proceedings shows that in 1930 Carter acquired 200 shares of Gulf Oil Corporation stock, paying therefor $20,700—not $20,970, as shown by the return. There was a considerable shrinkage in the market price of Gulf Oil Corporation stock in 1930 after its purchase by Carter.

In December 1930 Carter entered into a transaction with J. M. Brewer by which Brewer gave him his note for $12,550, which was the then market price for the 200 shares, payable with interest in March 1931. Upon the receipt of the note Carter endorsed his stock certificates in blank, attached to them the note received from Brewer, and placed them in his safety deposit box.

Brewer was a truck driver in Carter's employ and received a salary of approximately $100 per month. During 1929 he had an income from oil royalties of approximately $6,000, and in 1930 an income of approximately $1,700. In March 1931 the market price for the shares was approximately the same or a little above the market price in December of 1930. A dividend had been paid upon the stock between December and the following March, which was received by Carter, the record owner of the shares. Pursuant to an agreement made by Carter with Brewer shortly after the maturity of the note in March 1931, the note was canceled without any payment of interest and Carter "took back" the shares of stock.

It was upon this transaction that Carter claims to have sustained a loss in 1930 of the difference between the cost of these shares, $20,700, and the amount of the note, $12,550.

In December 1931 Carter again decided to "sell" his 200 shares of Gulf Oil Corporation stock. He took them to H. M. Ainsworth, president of the Lipscomb Bank & Trust Co., of Luling, Texas. The fair market value of the shares at the time was $5,600. Ainsworth agreed to "buy" the shares from Carter, and gave him his note with interest for $5,600 due in June 1932. Carter turned over the shares of stock to Ainsworth and accepted Ainsworth's note for them. The shares were transferred to Ainsworth on the corporation's books. In June 1932, when the note became due, Carter surrendered it to Ainsworth without any payment of principal or interest having been made thereon and Ainsworth turned over his certificates for 200 shares of Gulf Oil Corporation stock to Carter. The shares were then retransferred to Carter on the books of the Gulf Oil Corporation.

The tax return filed by Carter for 1931 shows community income received from salaries, wages, commissions, etc., of $4,536.15 and expenses paid in connection therewith of $5,353.14, or a loss from salaries, wages, and commissions of $816.99, which amount was deducted from community income received from all sources in the determination of the net community income reported for 1931 of $22,-202.36. In the determination of the deficiency the respondent added back to the net community income $306.75, reducing the claimed community loss of $816.99 by that amount.

No bona fide sales of Gulf Oil Corporation stock were made by Carter in 1930 or 1931, and the income tax returns filed by him for those years in which amounts were deducted for losses from alleged sales were false and fraudulent with intent to evade tax.

Carter's first contention is that the deficiency determined for 1930 is barred by the statute of limitations. It is not barred, however, if the return filed for 1930 was false and fraudulent with intent to evade tax. Sec. 276 (a) of the Revenue Act of 1928.

The only evidence before us in these proceedings consists of Carter's testimony and his income tax returns for 1930 and 1931. Carter testified somewhat evasively that the claimed sales of 200 shares of Gulf Oil Corporation in 1930 and 1931 were not made with the object in view of reducing income tax liability. We are satisfied, however, from a consideration of all the evidence of record, that this is not so. The shares of stock of the Gulf Oil Corporation were listed on the New York Curb Exchange. If Carter had desired to sell his shares in December 1930 and December 1931, he could have done so very readily, and realized the market value in cash therefor. Instead of doing that he made an arrangement in December 1930 with his truck driver whereby the truck driver, without making any

down payment on the shares of stock, gave the petitioner his note for the shares to be paid in March 1931, and when the note matured the maker did not pay the note but requested Carter to take back the stock. Whether the maker of the note was financially responsible in December 1930 does not appear from the evidence. He was a truck driver who received a salary of approximately $100 a month. We are of the opinion that the proven facts in this case show that it was not the intention of Carter to make a sale of the stock to Brewer in December 1930. If Carter had desired to part with title to the stock he could at least have sold the stock when Brewer failed to pay his note at maturity and applied the proceeds against the note. The evidence indicates that the market value of the shares at that time was equal to or greater than the value in December 1930.

The burden of proving fraud is on the respondent, but, as was said in *L. Schepp Co.*, 25 B. T. A. 419, at page 421:

In meeting his statutory burden of proof, the respondent is not confined to the affirmative evidence adduced by him; if the weight of all the valid evidence in the case establishes fraud, his burden is discharged, and it is immaterial by which of the opposing parties the evidence was introduced.

We are of the opinion that the claimed sale of the Gulf Oil Corporation stock by Carter in December 1930 was not bona fide, and that the return filed by Carter for 1930 was false and fraudulent with intent to evade tax. The determination by the respondent of the deficiency for 1930, together with the 50 percent fraud penalty, is sustained.

In December 1931 Carter practically duplicated the transaction which he had made in December 1930. The point of material difference is that in December 1931 Carter went to H. M. Ainsworth, the president of the Lipscomb Bank & Trust Co., at Luling. Ainsworth gave Carter his note for the purchase price of the stock, payable approximately six months later, took possession of the shares of stock, and had them transferred to his name. Then in June 1932, when the note matured, the stock was turned back to Carter by Ainsworth, the note was canceled, and the stock was retransferred to Carter's name upon the corporation's books of account. Carter still owned the shares of stock at the date of hearing in 1936.

If only the year 1931 were before us we might be disposed to consider that Carter made a bona fide sale of the shares of stock in question in 1931. In *Harold F. Seymour*, 27 B. T. A. 403, the Board stated as follows:

Though the Board has approved deductions for losses where the evidence was not decidedly more favorable to petitioner than that surrounding the first purported sale, we can recall no case in which approval has been given where the same parties went through almost the identical process in the next year. To approve a single instance requires the resolving of many doubts in favor

of the petitioner, but to permit a recurrence of the same procedure in the next year under the circumstances here present overtaxes our credulity. Despite the statements of the parties to the transactions that they were outright sales, we are not convinced that such sales were free and genuine. In our judgment they were lacking in bona fides.

If the transaction of 1927–1928 stood alone the deduction might conceivably have been allowed, but the repetition thereof for the years 1928–1929 in precise parallelism goes beyond mere coincidence. It casts such doubt on the good faith of petitioner in both years as to make it impossible for us to approve the purported sales. The evidence and the inferences reasonably to be drawn therefrom lean too strongly against petitioner to permit us to approve the deductions.

It is quite apparent, in view of the fact that Carter is still the owner of the shares of stock reported to have been sold, that he had no real losses from the claimed sales of shares of stock in 1930 and 1931. The evidence is compelling that the transaction with Ainsworth, as with Brewer, was merely for the purpose of establishing an income tax loss without Carter making any sale of the shares of stock. The same conclusion must be reached with respect to the transaction in 1931 as was reached with respect to that in 1930. Carter sustained no deductible loss from the claimed sale and the return filed for 1931 was false and fraudulent.

Carter further contends that the respondent erred in adding $306.75 for salaries and commissions to the community income reported for 1931. The return filed showed a loss to the community from salaries and commissions of $817.29. The net effect of the respondent's adjustment is to reduce that claimed loss by $306.75. The burden was upon Carter to prove error on the part of the respondent in making the adjustment. The only proof submitted by Carter upon this point consists of his testimony that the amounts received for salaries and commissions in 1931 were correctly stated on the return, according to his best recollection. On cross-examination it was brought out, however, that Carter's testimony was directly to the total amount received, $4,536.15, and not to the correctness of a claimed loss of $817.29 in respect of salaries and commissions. We must conclude upon this evidence that Carter has not sustained the burden of proof by showing error on the part of the respondent in reducing the claimed loss from this source by $306.75. The adjustment made by the respondent is approved.

No evidence was submitted by petitioner Mrs. Robert Wilson Carter in support of her contention that the respondent was in error in determining a deficiency in income tax for 1931 of $225. Manifestly, if the deficiency determined against Carter for 1931 is correct, the deficiency determined against Mrs. Robert Wilson Carter is also correct.

Reviewed by the Board.

*Judgment will be entered for the respondent.*